IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| KENNETH ANNAN | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) No. 12 C 3577 |
| VILLAGE OF ROMEOVILLE; ROMEOVILLE | ) |
| POLICE OFFICER ROBERT ZABOROWSKI, | ) Judge Virginia M. Kendall |
| Star No. 379; ROMEOVILLE POLICE | ) |
| OFFICER JOHN ALLEN, Star No. 349; | ) |
| ROMEOVILLE POLICE OFFICER | ) |
| CHRISTOPHER SWIATEK, Star No. 376 | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kenneth Annan ("Annan") filed an Amended Complaint pursuant to 42 U.S.C. § 1983 against Defendants Robert Zaborowski, John Allen and Christopher Swiatek (collectively, the "Officers") alleging violations of Annan's Fourth Amendment rights. Annan's Amended Complaint also alleges that Defendant Village of Romeoville is liable for Annan's injuries under *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978). The Defendants have moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. The Officers also move to dismiss the claims set forth against them individually claiming that they are immune from such claims. For the reasons set forth below, the Defendants' motion is granted. Counts I, II, III and IV of Annan's Complaint are dismissed with prejudice and Counts V, VI, VII and VIII are dismissed without prejudice.

## BACKGROUND

The following facts are taken from Annan's Amended Complaint and are assumed to be true for purposes of this Motion to Dismiss. *See Murphy v. Walker,* 51 F.3d 714, 717 (7th Cir. 1995). At some point in time prior to May 8, 2010, Annan brought his car to Spotless Express for "detailing work." (*See* Annan's Complaint, Doc. 29 at ¶ 7.) Annan agreed to pay $295 for the "detailing work." (*Id.* at ¶¶ 11, 13.) On May 8, 2010, Annan went back to Spotless Express to retrieve his car. (*Id.* at ¶ 7.) He was dissatisfied with the quality of the work and complained to the store manager. (*Id.* at ¶ 8.) He refused to pay the full $295. (*Id.* at ¶ 9.) Instead he offered to pay $50. (*Id.* at ¶ 10.) He and the manager did not reach an agreement on the purchase price; however, the manager allowed Annan to take his vehicle. (*Id.*) Annan provided the Spotless Express manager with his driver's license number, address and phone number. (*Id.*) The manager told Annan that he would inform Spotless Express's owner of Annan's $50 offer. (*Id.*)

On May 9, 2010, the Spotless Express owner, Steve Timmer, telephoned Annan and demanded that Annan pay the full $295 for the services performed. (*Id.* at ¶ 11.) Annan informed Timmer that he would not pay him that amount because of his dissatisfaction with Spotless Express's services. (*Id.* at ¶ 14.) In response, Timmer told Annan that he would call the police. (*Id.*) Timmer called the Romeoville police and excuted a sworn criminal complaint against Annan for Theft of Services (Romeoville Ordinance No. 132.08). (*Id.* at ¶¶ 15, 17.) The Officers were dispatched to Annan's house to execute the arrest. (*Id.* at ¶ 15.) Annan explained to the Officers when they arrived that he refused to pay the full amount for the "detailing work" to Spotless Express because of the poor quality of their services. (*Id.*) He also explained that he was still attempting to

negotiate a fair price with Spotless Express. (*Id.*) However, the Officers proceeded to arrest Annan. (*Id.*)

When the Officers executed the arrest, Annan informed them that he had recently had an operation near his genital area. (*Id.* at ¶ 16.) The Officers mocked Annan's injury and applied force to the area of the operation. (*Id.*) Annan was charged with Theft of Services. (*Id.* at ¶ 17.) He was subsequently found not guilty of the charge following a bench trial held on August 9, 2010. (*Id.*)

## STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all facts alleged in the complaint and construes all reasonable inferences in favor of the plaintiff. *See Murphy,* 51 F.3d at 717. To state a claim upon which relief may be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations are not required, but the plaintiff must allege facts that, when "accepted as true...'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (*quoting Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). In analyzing whether a complaint meets this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal,* 129 S. Ct. at 1950. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines if they plausibly give rise to an entitlement to relief. *See id.*

## DISCUSSION

Counts II, IV, VI and VIII of the Complaint bring constitutional civil rights claims against the Officers for false arrest, unlawful detention, excessive force and deliberate indifference to

3

medical needs. The remainder of the Counts in the Complaint allege *Monell* claims against Romeoville based on the underlying civil rights violations alleged against the Officers.[1]

I.      **The False Arrest and Unlawful Detention Claims (Counts II and IV)**

The Individual Defendants move to dismiss Counts II and IV on the grounds that Annan's allegations establish that the Officers had probable cause to arrest Annan and they cannot therefore be held liable for false arrest or unlawful detention. "Probable cause to arrest is an absolute defense to any claim...for wrongful arrest, false imprisonment, or malicious prosecution" even if defendant officers are alleged to have acted maliciously or for a racially-biased reason. *Mustafa v. City of Chicago,* 442 F.3d 544, 547 (7th Cir. 2006); *see also Kelley v. Myler,* 149 F.3d 641, 646 (7th Cir. 1998). Officers have probable cause to arrest an individual if the facts available at the time of the arrest are sufficient to allow a reasonable person to believe that the individual has committed, is committing, or is about to commit an offense. *See Chelios v. Heavener,* 520 F.3d 678, 686 (7th Cir. 2004). Although probable cause is often a mixed question of law and fact, it becomes a question of law when the undisputed facts are sufficient to create probable cause. *Ornelas v. United States,* 517 U.S. 690 (1996). An identification or report from a credible victim or eyewitness, without more, can provide a basis for probable cause. *See Woods v. City of Chicago,* 234 F.3d 979, 996 (7th Cir. 2000).

---

[1] The procedural posture of this case is unusual. Annan filed an original complaint. (Doc. 1.) The Defendants answered that complaint. (Doc. 24.) Annan then filed an amended complaint; however, the amended complaint did not change any of the factual allegations contained in the original complaint. (Doc 29.) The Defendants have now moved to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 30.) Rule 12(b) directs that a Rule 12(b)(6) motion "must be made before pleading if a responsive pleading is allowed." Neither party addressed the question of whether a party can move to dismiss an amended complaint, pursuant to Rule 12(b)(6), after it previously answered the same allegations in an earlier complaint. This Court was unable to locate a Seventh Circuit case that addressed the issue; however, other district courts presented with similar procedural scenarios have found that the motions are properly brought. *See, e.g., Rushaid v. National Oilwell Varco, Inc.,* No. H-11-3390, 2012 WL 1981990, at *3-4 (S.D. Tex. June 1, 2012); *Norflet v. John Hancock Fin. Servs., Inc.,* 422 F. Supp. 2d 346 (D. Conn. 2006). This Court finds that a party may move to dismiss an amended complaint, even if they answered the earlier complaint, because the motion is brought before they filed a responsive pleading to the operative amended complaint.

An arresting officer who has "received information from a reasonably credible victim or eyewitness" need not conduct additional investigation before making an arrest, "even if sound police technique would have required such further investigation." *Id.* at 997. Indeed, "[t]he complaint of a single witness or putative victim alone generally is sufficient to establish probable cause to arrest unless the complaint would lead a reasonable officer to be suspicious, in which case the officer has a further duty to investigate." *Beauchamp v. City of Noblesville, Ind.,* 320 F.3d 733, 743 (7th Cir. 2003). Moreover, "in crediting the complaint of a reasonably believable witness or putative victim, the police are under no constitutional obligation to exclude all suggestions that the witness or victim is not telling the truth." *Id.* (citing *Spiegal v. Cortese,* 196 F.3d 717, 724-25 (7th Cir. 2000).).

Here, Annan's allegations, once assumed to be true, are by themselves sufficient to demonstrate that the Officers had objectively reasonable probable cause to arrest Annan. The Complaint concedes that Annan refused to pay the full price for the work that was done to his car. The Complaint also concedes that the Spotless Express owner, Steve Timmer, called the police and executed a criminal complaint against Annan for Theft of Services. This is sufficient to establish probable cause. A reasonable officer could have found Timmer's allegations and sworn criminal complaint to be credible and sufficient to establish probable cause. *See id.* Indeed, Timmer would appear to be a particularly credible witness given his position as owner of Spotless Express. *See Mustafa,* 44 F.3d at 549 (a complainant in a managerial position is a "reasonably credible witness"). In fact, Annan concedes that he told the police he refused to pay for Spotless Express's services. This concession combined with the fact that the owner of Spotless Express executed a sworn complaint against Annan was more than sufficient to give the Officers probable cause to arrest Annan. *See Beauchamp,* 320 F.3d at 743; *Woods,* 234 F.3d at 996.

5

Even if the Officers did not technically have probable cause, these claims would still fail because the doctrine of qualified immunity shields the Officers from liability on these claims. The doctrine of qualified immunity bars liability against officials who perform discretionary functions in the course of their duties to the extent that their conduct does not violate clearly established rights of which a reasonable person would have known. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *Akande v. Grounds,* 555 F. 3d 586, 589 (7th Cir. 2009). Although it is ordinarily an affirmative defense, a qualified immunity defense may be raised in a motion to dismiss. *See McDonald v. Haskins,* 966 F.2d 292 (7th Cir. 1992). Once a defendant has pleaded a defense of qualified immunity, it is appropriate for courts to approach the issue using a two-step analysis: (1) Does the alleged conduct set out a constitutional violation? And (2) were the constitutional standards clearly established at the time in question? *See Pearson v. Callahan,* 555 U.S. 223, 232 (2009).

When a defense of qualified immunity is raised against a false arrest claim, courts consider whether "the officer actually had probable cause or, if there is no probable cause, whether a reasonable officer could have mistakenly believed that probable cause existed." *Carmichael v. Village of Palatine,* 605 F.3d 451, 459 (7th Cir. 2010) (*quoting Williams v. Jaglowski,* 269 F.3d 778, 781 (7th Cir. 2001)). Thus, qualified immunity applies not only to those officers who correctly determine probable cause exists, but also those officers who "reasonably but mistakenly conclude that it does." *Spiegal,* 196 F.3d at 723 (citing *Hunter v. Bryant,* 502 U.S. 224, 227 (1991)). This inquiry is referred to as "arguable" probable cause. "Arguable" probable cause exists when a "reasonable police officer in the same circumstances...possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established

6

law." *Humphrey v. Staszak,* 148 F.3d 719, 725 (7th Cir. 1998) (*quoting Gold v. City of Miami,* 121 F.3d 1442, 1445 (11th Cir. 1997)) (emphasis omitted).

Here, Annan's Complaint concedes that he refused to pay the fee demanded by the owner of Spotless Express, the owner called the police, the owner executed a sworn complaint against Annan and Annan was arrested and charged with theft of services based on the owner's sworn criminal complaint. Any reasonable police officer presented with these facts would believe they had probable cause to arrest Annan. Therefore, the Officers are entitled to qualified immunity on these claims. Accordingly, Annan's claims of false arrest and unlawful detention cannot be sustained against the Officers. Counts II and IV are therefore dismissed with prejudice.[2]

## II. The Excessive Force Claim (Count VI)

In Count VI of his Complaint, Annan alleges that when the Officers executed the arrest, he "informed the[m]...of his physical ailment, to wit, that he had recently had an operation which happened to be near his genital area, and the police officers proceeded to mock this and apply excessive force near the area of the operation, deliberately, willfully, wantonly, and sadistically, to cause plaintiff the greatest pain." (Doc. 29 at ¶ 16.)

This single allegation is insufficient to state a claim for a constitutional violation based on excessive force. "[A]ll claims that law enforcement officers have used excessive force...in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard..." *Graham v. Connor,* 490 U.S. 386, 395

---

[2] Annan has not requested leave to further amend his complaint at this time. However, any attempt to amend Counts II and IV would be futile because Annan cannot erase the allegations establishing probable cause. Accordingly, Counts II and IV are dismissed with prejudice. *See Foman v. Davis,* 371 U.S. 178, 182 (1962) (holding that a party should not be granted leave to amend where any amendment would be futile or in bad faith).

(1989 (emphasis omitted); *see also Acevedo v. Canterbury,* 457 F.3d 721, 724 (7th Cir. 2006). While at the pleadings stage a plaintiff is only required to provide a short and plain statement of the claim showing that the pleader is entitled to relief, he or she must allege sufficient facts to make his or her right to relief plausible. A formulaic recitation of the elements of a cause of action with merely labels and legal conclusions is insufficient to state a claim. *See Twombly,* 550 U.S. at 555. A complaint must provide enough to raise a litigant's right of relief above a speculative level. *See id.*

Here, Annan fails to allege any facts that raises his right to relief above a speculative level. While he identifies a preexisting injury, he simply alleges that the Officers applied excessive force to the area as the basis for his claim. This is the type of label or legal conclusion that *Twombly* directs is insufficient to state to claim upon which relief may be granted. Some amount of force is required in the execution of every arrest. *See Graham,* 490 U.S. at 396 ("[T]he right to make an arrest...necessarily carries with it the right to use some degree of physical coercion of threat thereof to effect it."). Indeed, the act of placing handcuffs on an individual is a form of force. However, such an act is deemed reasonable and acceptable under the Fourth Amendment. Therefore, to state a claim for a constitutional violation based on excessive force, Annan must plead some facts that describe the force the officers used in executing the arrest so that the Court can ascertain whether it was plausibly excessive. Annan's Complaint, as currently drafted, fails to do this. However, the Court does not believe that it would futile to give him another opportunity to adequately plead this claim. Accordingly, this claim is dismissed without prejudice.

## III. The Deliberate Indifference to Medical Needs Claim (Count VIII)

In Count VIII, Annan alleges that the Officers were deliberately indifferent to his medical needs as a pretrial detainee in violation of his Fourth and Fourteenth Amendment rights. The Seventh Circuit has held that "the protections of the Fourth Amendment apply at arrest and through the *Gerstein* probable cause hearing, due process principles govern a pretrial detainee's conditions of confinement after the judicial determination of probable cause, and the Eighth Amendment applies following a conviction." *Lopez v. City of Chicago,* 464 F.3d 711, 719 (7th Cir. 2006). Since Annan does not allege that any constitutional violation occurred after a *Gerstein* probable cause hearing[3], the Fourteenth Amendment and the deliberate indifference standard are inapplicable to this case. Rather, Annan's Complaint must be analyzed under the Fourth Amendment's objectively unreasonable standard.

To determine whether a defendant's conduct is objectively unreasonable under the Fourth Amendment, courts evaluate four factors. *See Sides v. City of Champaign,* 496 F.3d 820, 823 (7th Cir. 2007); *Williams v. Rodriguez,* 509 F.3d 392, 403 (7th Cir. 2007). The first factor measures whether the officer has received notice of the arrestee's medical need either through the arrestee's words or through observation of the arrestee's physical symptoms. *Sides*, 496 F.3d at 823, 828. The second factor considers the seriousness of the medical need. *Id.* at 828. "The severity of the medical condition under this standard need not, on its own, rise to the level of objective seriousness required under the Eighth and Fourteenth Amendments. Instead, the Fourth Amendment's reasonableness analysis operates on a sliding scale, balancing the seriousness of the medical need with the third

---

[3]In *Gerstein v. Pugh,* 420 U.S. 103 (1975), the Supreme Court held that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest.

factor—the scope of the requested treatment." *Williams*, 509 F.3d at 403. Finally, police interests also factor into the reasonableness determination. *Sides*, 496 F.3d at 828.

Here, Annan fails to allege any facts that establish the Officers were objectively unreasonable in failing to provide care for his medical needs. While Annan alleges that he had recently had an operation, he does not allege any facts explaining how the operation created a medical need for him at the time the Officers executed the arrest. He does not allege any other medical needs at the time of the arrest. As a result, even in drawing all reasonable inferences in favor of Annan, he has failed to allege any facts that make it plausible that could meet the first and second factors of the *Sides* test. There are no allegations that suggest the Officers had notice of a medical need or that such a need was serious. Accordingly, this claim is dismissed without prejudice.[4]

## IV. The *Monell* Claims (Counts I, III, V and VII)

Since the dismissal of Counts II, IV, VI and VIII means that Annan cannot state a claim for a constitutional violation against the Officers, he cannot state a claim against Romeoville pursuant to *U.S. v. Monell. See City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986) (holding that there can be no *Monell* liability under Section 1983 without an underlying constitutional violation); *Mathews v. City of East St. Louis,* 675 F.3d 703, 708 (7th Cir. 2012) (same). Accordingly, Annan's *Monell* claims are dismissed because he failed to sufficiently allege an underlying constitutional violation.

However, even if he had adequately alleged an underlying constitutional violation, Annan's *Monell* claims would still be dismissed because he failed to sufficiently allege a claim for relief

---

[4]The Officers also argue that the doctrine of qualified immunity bars liability on the excessive force claim and the failure to attend to medical needs claim. However, a determination on qualified immunity on these claims at the pleadings stage would be premature.

under *Monell*. In *Monell,* the Supreme Court held that a local government cannot be vicariously liable under Section 1983 for an injury inflicted solely by its employees or agents. *Monell,* 436 U.S. at 690-94. Municipalities are responsible for their own policies, not the alleged misconduct of their employees. *See Estate of Sims v. County of Bureau,* 506 F.3d 509, 515 (7th Cir. 2007). Accordingly, a municipality is only liable for a violation of Section 1983 when the execution of one of its policies or customs caused the constitutional injury. *See Baskin v. City of Des Plaines,* 138 F.3d 701, 704 (7th Cir. 1998). There are three ways to establish this: (1) an express policy that, when enforced, caused a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled that it constitutes a policy when enforced; or (3) the constitutional injury was caused by a person with final policy-making authority. *See Lewis v. City of Chicago,* 496 F.3d 645, 656 (7th Cir. 2007).

Annan does not identify an express policy that caused his constitutional deprivations. He does not allege that his constitutional injury was caused by a person with final policy-making authority. Rather, in conclusory fashion, he alleges that his injuries were the result of Romeoville's policies. For example, he alleges that Romeoville is liable under *Monell* for the Officers' alleged excessive force because "Defendant Village of Romeoville maintains a policy by which officers use excessive force to arrest individuals with no probable cause or reasonable suspicion warranting such." (Doc. 29 at ¶ 33.) The Complaint contains no other allegations that would support the existence of this purported policy. Accordingly, this conclusory assertion is insufficient to establish the existence of a policy or widespread practice that caused Annan's alleged constitutional injuries. *See McCauley v. City of Chicago,* 671 F.3d 611, 616 (7th Cir. 2011) (holding that a plaintiff must provide some specific facts supporting a claim that a municipality maintained a policy, custom or

11

practice of intentional discrimination). Indeed "[a] single isolated incident of wrongdoing by a non-policymaker is generally insufficient to establish municipal acquiescence in unconstitutional conduct." *Cornfield v. Consolidated High School Dist. No. 230,* 991 F.2d 1216, 1326 (7th Cir. 1993). Annan's failure to allege any facts that would support the existence of a policy causes his *Monell* claims to fail. Since the Court has found, as a matter of law, that the Officers had probable cause to arrest and detain Annan, Counts I and III are dismissed with prejudice because Annan cannot establish the necessary underlying constitutional violation to state a *Monell* claim for false arrest or unlawful detention. Counts V and VII are dismissed without prejudice.

## CONCLUSION

The motion to dismiss is granted for the reasons set forth above. Counts I, II, III and IV are dismissed with prejudice. Counts V, VI, VII and VIII are dismissed without prejudice. Annan is given leave to file an amended complaint on Counts V, VI, VII and VIII within two weeks of the entry of this order.

                                                                                         _____
                                                                                         Virginia M. Kendall
                                                                                         United States District Court Judge
                                                                                         Northern District of Illinois

Date: February 25, 2013